IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ACUMENT GLOBAL TECHNOLOGIES, INC. and ACUMENT GLOBAL TECHNOLOGIES, INC. PENSION PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>TOWERS WATSON & CO. and TOWERS WATSON INVESTMENT SERVICES, INC. (F/K/A WATSON WYATT INVESTMENT CONSULTING, INC.),<br><br>Defendants and Third-Party Plaintiffs,<br><br>v.<br><br>WESTRIDGE CAPITAL MANAGEMENT, INC., WG TRADING COMPANY LP, WG TRADING INVESTORS, LP, STEPHEN WALSH AND PAUL GREENWOOD,<br><br>Third-Party Defendants.<br>_____<br>TOWERS WATSON & CO. and TOWERS WATSON INVESTMENT SERVICES, INC.,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>ACUMENT GLOBAL TECHNOLOGIES, INC.<br><br>Counterclaim Defendant. | No. 1:12-cv-00506-LLS<br><br>**[REDACTED]** |

## DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIM

All Defendants, by and through their attorneys, hereby submit this Answer in response to the numbered paragraphs of Plaintiffs' Complaint, and this Counterclaim.

## ANSWER

### PRELIMINARY STATEMENT[1]

1.      It is admitted only that Towers Watson Investment Services, Inc. (f/k/a Watson Wyatt Investment Consulting, Inc. ("TWIS"), is a wholly-owned subsidiary of Towers Watson & Co.  The balance of the remaining allegations set forth in paragraph 1 state conclusions of law to which no responsive pleading is required.  To the extent a response is required, the remaining allegations set forth in paragraph 1 are denied.

2.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first sentence of paragraph 2, and such allegations are therefore denied.  As to the remaining allegations of paragraph 2, Defendants admit only that on at least one occasion certain persons employed by TWIS met with certain members of the Investment Committee of the Acument Pension Plan ("Investment Committee") regarding TWIS' investment consulting services.  All remaining allegations set forth in paragraph 2 are denied.

3.      The allegations set forth in the first sentence of paragraph 3 state conclusions of law to which no responsive pleading is required.  To the extent the allegations of this sentence of paragraph 3 are deemed to be factual, the allegations are denied.  The remaining allegations of paragraph 3 are denied.

4.      It is admitted that, at some point Acument Global Technologies, Inc. ("Acument") provided TWIS with written information and/or documents, the terms of which speak for themselves; such allegations concerning these written documents are denied to the extent that

---

[1] Headings from the Complaint are included for ease of reference, and their inclusion does not constitute an admission of any kind.  The headings included in the Complaint do not constitute allegations and therefore no responsive pleading to the headings is required; to the extent a response is required, all allegations contained within the headings are denied.

they are inconsistent with the written documents and/or do not reflect the documents in their entirety.  It is further admitted that TWIS identified certain investment managers for particular asset classes, and identified an investment with Westridge Capital Management, Inc. and related entities (collectively "Westridge") for the Plan's large cap U.S. equity asset class.  All remaining allegations set forth in paragraph 4 are denied.

5.      It is admitted, upon information and belief, that the Plan invested approximately $56 million with Westridge.  All remaining allegations set forth in paragraph 5 are denied.

6.      Denied, except that it is admitted that Westridge and its principals were engaged in an elaborate scheme to defraud numerous Westridge investors, their auditors, and government agencies.

7.      Denied.

8.      It is admitted that Westridge and its principals were engaged in an elaborate scheme to defraud numerous Westridge investors, their auditors, and numerous government agencies.

9.      Denied.

10.      Denied, except that it is admitted that Plaintiffs purport to bring this suit under the Employee Retirement Income Security Act of 1974 ("ERISA") and other federal laws.  By way of further answer, Defendants deny that Plaintiffs are entitled to any of the relief they seek.

11.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11, and such allegations are therefore denied.  By way of further answer, Defendants deny that any evidence exists to support any of the claims against Defendants as set forth in the Complaint.

## JURISDICTION AND VENUE

12.     The allegations set forth in paragraph 12 state conclusions of law to which no responsive pleading is required.

13.     It is admitted only that Towers Watson & Co. and TWIS have offices located in New York, New York, and that Towers Watson & Co. is a corporation headquartered in New York, New York.  The remaining allegations set forth in paragraph 13 state conclusions of law to which no responsive pleading is required.  To the extent the remaining allegations of this paragraph are deemed to be factual, the allegations are denied.

## THE PARTIES

14.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14 and such allegations are therefore denied.

15.     The allegations set forth in paragraph 15 state conclusions of law to which no responsive pleading is required.

16.     Denied, except that it is admitted that prior to January 2010, Watson Wyatt Investment Consulting, Inc. was a wholly-owned subsidiary of Watson Wyatt Worldwide, Inc., was organized under the law of the State of Delaware, and had offices located at 875 Third Avenue, New York, New York, 10022.

17.     It is admitted only that TWIS complied with all applicable registration requirements established by the Securities and Exchange Commission during relevant periods as alleged in the Complaint.  The remaining allegations set forth in paragraph 17 state conclusions of law to which no responsive pleading is required; to the extent that these allegations are deemed to be factual, they are denied.

18.    The allegations set forth in paragraph 18 state conclusions of law to which no responsive pleading is required.

19.    Denied, except that it is admitted that in January 2010, Watson Wyatt Worldwide Inc. and Towers, Perrin, Forster & Crosby, Inc. merged to form Towers Watson & Co., which is a corporation organized under the laws of the State of Delaware and which has offices at 875 Third Avenue, New York, York 10027.

20.    It is admitted that Towers Watson & Co. and TWIS have offices at 335 Madison Avenue, New York, New York 10017 and Towers Watson & Co. is a corporation headquartered in New York, New York.  It is admitted that TWIS complied with all applicable registration requirements established by the Securities and Exchange Commission during relevant periods as alleged in the Complaint.  All remaining allegations in paragraph 20 are denied.

21.    Denied.

## FACTUAL ALLEGATIONS

22.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 22, and such allegations are therefore denied.

23.    Denied.

24.    The allegations in the first sentence of paragraph 24 are admitted.  All remaining allegations in paragraph 24 are denied.

25.    It is admitted that TWIS was engaged to provide certain services.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 25, and such allegations are therefore denied.

26.     Denied, except that it is admitted that in or about December 2007, TWIS, Acument, and the Investment Committee executed an agreement (the "Investment Consulting Agreement"), the terms of which speak for themselves.

27.     Denied, except that it is admitted that in or about December 2007, TWIS, Acument, and the Investment Committee executed the Investment Consulting Agreement, the terms of which speak for themselves.

28.     Denied, except that it is admitted that in or about December 2007, TWIS, Acument, and the Investment Committee executed the Investment Consulting Agreement, the terms of which speak for themselves.

29.     Denied, except that it is admitted that in or about December 2007, TWIS, Acument, and the Investment Committee executed the Investment Consulting Agreement, the terms of which speak for themselves.

30.     Denied, except that it is admitted that in or about December 2007, TWIS, Acument, and the Investment Committee executed the Investment Consulting Agreement, the terms of which speak for themselves.

31.     Denied, except that it is admitted that TWIS received on certain occasions fees for providing certain consulting services to Acument.

32.     Denied, except that it is admitted that in or about December 2007, Acument provided certain documents to TWIS concerning Acument and the Plan.

33.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 33, and such allegations are therefore denied.

34.    Denied, except that it is admitted only that certain persons employed by TWIS met with certain members of the Investment Committee in or about January 2008 and discussed matters related to the Plan.

35.    Denied, except that it is admitted only that representatives from TWIS met with certain members of the Investment Committee in or about January 2008 and discussed matters related to the Plan.

36.    It is admitted only that certain persons employed by TWIS met with certain members of the Investment Committee in or about January, 2008 and discussed matters related to the Plan.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the third sentence in paragraph 36, and such allegations are therefore denied.  All remaining allegations in paragraph 36 are denied.

37.    Denied.

38.    Denied, except that it is admitted only that in or about February 2008, certain persons employed by TWIS met with certain members of the Investment Committee and discussed matters related to the Plan.

39.    Denied.

40.    It is admitted that the Plan invested approximately $56 million with Westridge in 2008 and early 2009.  The remaining allegations of paragraph 40 are denied.

41.    It is admitted that the Plan invested approximately $56 million with Westridge in 2008 and early 2009.  The remaining allegations of paragraph 41 are denied.

42.    It is admitted that the Plan invested approximately $56 million with Westridge in 2008 and early 2009.  It is admitted only that Westridge and its principals were engaged in an elaborate scheme to defraud Westridge's investors, auditors and government regulators.

Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 42, and such allegations are therefore denied.

43.     It is admitted that on or about February 25, 2009, the Commodity Futures Trading Commission and the Securities and Exchange Commission filed complaints in U.S. District Court for the Southern District of New York seeking, *inter alia*, injunctive relief and the appointment of a receiver.  The complaints filed by the Commodity Futures Trading Commission and the Securities and Exchange Commission are written documents whose terms speak for themselves.

44.     Denied.  By way of further answer, the allegations set forth in paragraph 44 characterize written documents, the terms of which speak for themselves; such allegations are denied to the extent they are inconsistent with the terms of the written documents and/or do not reflect the documents in their entirety.

45.     Denied.

46.     Denied.  By way of further answer, the allegations set forth in paragraph 46 characterize written documents, the terms of which speak for themselves; such allegations are denied to the extent they are inconsistent with the terms of the written documents and/or do not reflect the documents in their entirety.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.  By way of further answer, the allegations set forth in paragraph 52 characterize written documents, the terms of which speak for themselves; such allegations are denied to the extent they are inconsistent with the terms of the written documents and/or do not reflect the documents in their entirety.

53.     Denied.

54.     Denied.

55.     Denied.

## COUNT I — BREACH OF FIDUCIARY DUTY

## (FAILURE TO EXERCISE DILIGENCE AND PRUDENCE)

56.     Defendants hereby incorporate by reference their responses as set forth in the paragraphs above.

57.     The allegations set forth in paragraph 57 state conclusions of law to which no responsive pleading is required; such allegations are denied to the extent they are inconsistent with the relevant statutory provisions, regulations or other governing law, and/or do not reflect such statutory provisions, regulations or other governing law in their entirety.

58.     The allegations set forth in the first sentence of paragraph 58 state conclusions of law to which no responsive pleading is required; such allegations are denied to the extent they are inconsistent with the relevant statutory provisions, regulations or other governing law, and/or do not reflect such statutory provisions, regulations or other governing law in their entirety.  All remaining allegations of paragraph 58 are denied.

59.     The allegations set forth in paragraph 59 state conclusions of law to which no responsive pleading is required; such allegations are denied to the extent they are inconsistent

with the relevant statutory provisions, regulations or other governing law, and/or do not reflect

such statutory provisions, regulations or other governing law in their entirety.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

64.     The allegations set forth in paragraph 64 state conclusions of law to which no

responsive pleading is required; such allegations are denied to the extent they are inconsistent

with the relevant statutory provisions, regulations or other governing law, and/or do not reflect

such statutory provisions, regulations or other governing law in their entirety.

65.     Denied.

**COUNT II — BREACH OF FIDUCIARY DUTY**

**(FAILURE TO DISCLOSE MATERIAL INFORMATION)**

66.     Defendants hereby incorporate by reference their responses as set forth in the

paragraphs above.

67.     The allegations set forth in paragraph 67 state conclusions of law to which no

responsive pleading is required; such allegations are denied to the extent they are inconsistent

with the relevant statutory provisions, regulations or other governing law, and/or do not reflect

such statutory provisions, regulations or other governing law in their entirety.

68.     The allegations set forth in paragraph 68 state conclusions of law to which no

responsive pleading is required; such allegations are denied to the extent they are inconsistent

with the relevant statutory provisions, regulations or other governing law, and/or do not reflect

such statutory provisions, regulations or other governing law in their entirety.

69.    Denied.

70.    Denied.

71.    Denied.

72.    Denied.  By way of further answer, the allegations set forth in paragraph 72 characterize written documents, the terms of which speak for themselves; such allegations are denied to the extent that are inconsistent with the terms of the written documents and/or do not reflect the documents in their entirety.

73.    Denied.

74.    Denied.  By way of further answer, the allegations set forth in paragraph 74 appear to characterize written documents, the terms of which speak for themselves; such allegations are denied to the extent they are inconsistent with the terms of the written documents and/or do not reflect the documents in their entirety.

75.    Denied.

76.    Denied.

77.    Denied.

78.    Denied.

79.    Denied.

80.    The allegations set forth in paragraph 80 state conclusions of law to which no responsive pleading is required; such allegations are denied to the extent they are inconsistent with the relevant statutory provisions, regulations or other governing law, and/or do not reflect such statutory provisions, regulations or other governing law in their entirety.

81.    Denied.

## COUNT III — BREACH OF FIDUCIARY DUTY

## (FAILURE TO ACT IN ACCORDANCE WITH PLAN DOCUMENTS)

82.     Defendants hereby incorporate by reference their responses as set forth in the paragraphs above.

83.     The allegations set forth in paragraph 83 state conclusions of law to which no responsive pleading is required; such allegations are denied to the extent they are inconsistent with the relevant statutory provisions, regulations or other governing law, and/or do not reflect such statutory provisions, regulations or other governing law in their entirety.

84.     Denied.

85.     Denied.

86.     Denied.

87.     The allegations set forth in paragraph 87 state conclusions of law to which no responsive pleading is required; such allegations are denied to the extent they are inconsistent with the relevant statutory provisions, regulations or other governing law, and/or do not reflect such statutory provisions, regulations or other governing law in their entirety.

88.     Denied.

## COUNT IV — BREACH OF FIDUCIARY DUTY

## (FAILURE TO ADEQUATELY DIVERSIFY PLAN ASSETS)

89.     Defendants hereby incorporate by reference their responses as set forth in the paragraphs above.

90.     The allegations set forth in paragraph 90 state conclusions of law to which no responsive pleading is required; such allegations are denied to the extent they are inconsistent

with the relevant statutory provisions, regulations or other governing law, and/or do not reflect such statutory provisions, regulations or other governing law in their entirety.

91.  Denied.

92.  Denied.

93.  Denied.

94.  Denied.

95.  Denied.

96.  Denied.

97.  The allegations set forth in paragraph 97 state conclusions of law to which no responsive pleading is required; such allegations are denied to the extent they are inconsistent with the relevant statutory provisions, regulations or other governing law, and/or do not reflect such statutory provisions, regulations or other governing law in their entirety.

98.  Denied.

## PRAYER FOR RELIEF

A) - H).  Defendants deny that Plaintiffs are entitled to any of the relief they seek, and deny each and every allegation of the Complaint not heretofore specifically denied.

## DEFENSES

In addition to the reasons stated above, Plaintiffs are not entitled to relief, and Defendants are entitled to judgment in their favor and against Plaintiffs, on the basis of the following Defenses, which are pled in the alternative. In asserting these defenses, Defendants do not assume the burden of proof of any issue that would otherwise rest on Plaintiffs.

1.  Defendants at all times acted in conformance with any applicable requirements

of reasonableness or due care and with the care, skill, prudence and diligence that a prudent person acting in a like capacity and familiar with such matters would use.

2.    Defendants at all times acted with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  Numerous other investors, including other pension plans, were misled by Westridge, as were its auditors and others.

3.    A reasonably prudent investor incorporating a prudent process would have made the same investment selections and/or recommendation for investments for the Plan.  Numerous other investors, including other pension plans and sophisticated institutional investors, were misled by Westridge, as were its auditors and others.

4.    Defendants at all times acted in conformance with the goals and wishes of the Investment Committee for the Plan.  The Investment Committee set aggressive goals for its investment returns because it wanted to terminate the Plan without making any contributions by Plaintiff Acument to the Plan.

5.    Defendants did not cause any of the losses about which Plaintiffs complain.

6.    Defendants had no duty to disclose the information that the Complaint alleges was not disclosed.

7.    Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation.

8.    Any losses alleged by Plaintiffs were not actually or proximately caused by any act, fault, or omission of the Defendants, but were caused by circumstances, entities, or persons for which Defendants are not responsible and cannot be held liable.

9.      Damages or losses asserted in the Complaint were caused by intervening and or superseding events for which Defendants are not legally responsible.

10.     Plaintiffs' claims are barred and/or Defendants are entitled to an offset against any damages award because Plaintiffs have proximately caused, contributed to, or failed to mitigate any and all losses claimed by them and, as such, Defendants did not cause "any losses to the Plan" under ERISA Section 409(a), 29 U.S.C. § 1109(a).

11.     Plaintiffs were represented by legal counsel with respect to the Westridge investment, and Plaintiffs are charged with what their counsel knew or should have known with respect to that investment.

12.     Plaintiffs' claims are barred and/or Defendants are entitled to an offset against any damages award with respect to any benefit actually received by Plaintiffs or others through the services Defendants provided, including other investments that yielded significant returns for the Plan.

13.     Plaintiffs' claims are subject to equitable and/or judicial estoppel.  By way of example, Plaintiffs have asserted in the related Westridge receivership proceedings that all Westridge investors were equal victims that could not have discovered the fraud and therefore that all investors should be treated equally in the receivership proceedings.

14.     Plaintiffs' claims are barred and/or Defendants are entitled to an offset against any damages award with respect to any monies already recovered by Plaintiffs in any action or proceeding brought by any party against Westridge and/or its principals.

15.     Any award for restitution, disgorgement or other equitable remedy is barred because the funds sought are not in Defendants' possession.  Defendants did not profit from the investment in Westridge and were misled by Westridge just like other sophisticated investors.

15

16.     Any award for restitution, disgorgement or other equitable remedy must be reduced to take into account downward market trends throughout 2008 and 2009 as well as the Global Financial Crisis.

17.     Plaintiffs' claims are barred in whole or in part by the doctrines of laches, waiver, ratification, and unclean hands.

## RESERVATION OF RIGHTS

Defendants reserve the right to assert, and hereby give notice that they intend to rely upon, any other defense that may become available or appear during discovery proceedings or otherwise in this case and hereby reserve the right to amend their Answer to assert any such defense.

WHEREFORE, having fully answered, Defendants deny that Plaintiffs are entitled to the relief requested, or any other relief.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray that all of Plaintiffs' claims be dismissed with prejudice, and that all costs and fees, including attorneys' fees, be awarded to Defendants.

## COUNTERCLAIM

### PRELIMINARY STATEMENT

1.      This Counterclaim arises out of Acument's failure to fulfill its fiduciary duties to the Acument Global Technologies, Inc. Pension Plan.

2.      On January 20, 2012, Acument filed a complaint alleging that Towers Watson & Co. and Towers Watson Investment Services, Inc. (collectively, "Towers Watson") breached its duties as an ERISA fiduciary with regard to the recommendation of Westridge Capital Management, Inc. as an investment manager for the Plan.

3.      During the relevant period, Acument was also an ERISA fiduciary under the Plan.

4.      As a fiduciary, Acument was obligated to: (i) independently investigate and evaluate potential investment managers, including Westridge; (ii) read the materials provided by Towers Watson and ask questions if it did not understand information contained in the provided materials; and (iii) make accurate representations on matters affecting the Plan.

5.      In these and other respects, Acument wholly failed to fulfill its fiduciary duties to the Acument Plan.

6.      Acument is therefore required to contribute to any damages awarded in this action.

### FACTUAL ALLEGATIONS

I.      **Acument Was a Fiduciary Under the Acument Plan.**

A.      **The Acument Plan Master Provisions.**

7.      The Acument Plan was established on August 11, 2006.

8.      Section 8.04(a) of the Acument Plan's Master Provisions ("Plan Document") provides that ███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

9.      Section 8.04(b) provides that ███████████████████████████████

████████████████████████████████

10.     Section 8.04(c) provides that Acument ████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

11.     Section 8.05 provides that Acument ███████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████

12.     Section 8.06 provides that Acument ████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████

**B.      The Consulting Agreement.**

13.     In December 2007, Acument, on behalf of itself and the Investment Committee,

entered into a Consulting Agreement for Fiduciary Services with Towers Watson.[2]  The

Consulting Agreement provides that Towers Watson ████████████████████████████

████████████████████████████████████████████████████

14.     Exhibit A is titled ████████████████████████████████████

---

[2] The Consulting Agreement was entered into prior to the merger of Watson Wyatt Worldwide, Inc. and
Towers, Perrin, Forster & Crosby, Inc., and therefore "Watson Wyatt," not "Towers Watson," was the
named party in the Agreement.  For ease of reference, both Watson Wyatt and Towers Watson are
referred to throughout as "Towers Watson."

15.     Exhibit A states, in relevant part, that Towers Watson will have responsibility for ██████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████████████ ████████

16.     Towers Watson's responsibilities under Exhibit A were ████████████ ███████████████████████████████████████████████

17.     The Consulting Agreement did not provide Towers Watson with sole or exclusive responsibility over any aspect of the Acument Plan.

18.     No other writing provided Towers Watson sole or exclusive responsibility over any aspect of the Plan.

19.     Accordingly, Acument was a co-fiduciary with respect to the responsibilities enumerated in Exhibit A.

20.     The Consulting Agreement further states that █████████████████████ ████████████████████████████████████████████ █████████████████████████████████ To that end, the Agreement includes an Exhibit B that provides for █████████████████████████ ██████████████████████████ The parties expressly ██████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████

19

C.      **The Investment Policy.**

21.      Between December 2007 and August 2008, the Investment Committee, with the

help of Towers Watson, drafted and revised its Acument Global Technologies, Inc. Pension

Trust Investment Policy ("Investment Policy").  The Investment Policy sets out the ███████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████

22.      The Investment Policy was finalized on August 28, 2008.

23.      Reflecting the designation in the Plan Document, the Investment Policy states that

Acument ██████████████████████████████████████████████████

████████████

24.      It further provides that the Investment Committee ██████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████

25.      The Investment Policy delegates ████████████████████████

██████████████████████████████████████████████████████████████

███████████████

26.      ███████████████████████████████████████████

████████████████████████████

27.      The responsibilities of Trust Management include:

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████



## II.    Acument's Fiduciary Duties.

28.    Acument, as the Plan's named fiduciary, was responsible for the general administration of the Plan during the relevant period.

29.     Although Acument granted Towers Watson certain fiduciary responsibilities in Exhibit A of the Consulting Agreement, it did not grant Towers Watson exclusive or sole responsibility over any aspect of the Plan.

30.     The Consulting Agreement states that Towers Watson's responsibilities under Exhibit A were ███████████████████████████████████████████████████

███████████████████████████████████████████████████

31.     Accordingly, Acument had the ultimate authority to select investment managers for the Plan, including Westridge.

32.     In addition, Acument delegated certain responsibilities under the Plan to its own Investment Committee.

33.     The Investment Committee was a part of the Plan's "Trust Management," as that term is used in the Investment Policy.

34.     Trust Management was responsible for the hiring and monitoring of investment managers, among other things.

35.     Neither Acument nor its Investment Committee granted any third party, including Towers Watson, exclusive or sole responsibility for any duty of Trust Management.

36.     Accordingly, although Towers Watson assumed co-fiduciary responsibility for the hiring and monitoring of investment managers, Acument, through its Investment Committee, shared in this responsibility, along with the other responsibilities of Trust Management.

37.     Acument had a fiduciary responsibility to use care, skill, prudence, and diligence in the selection of investment managers for the Plan, including Westridge.

38.     In its discharge of these duties, Acument was obligated to: (i) independently investigate and evaluate potential investment managers, including Westridge; (ii) read the

materials provided by Towers Watson and ask questions if it did not understand information contained in the provided materials; and (iii) make accurate representations on matters affecting the Plan.

## III.   Acument Breached Its Fiduciary Duties.

### A.   Acument Failed to Read the Subscription Agreement and Term Sheet for the Westridge Investment.

39.     Acument's Investment Committee was comprised of Acument senior management.  From approximately November 2007 to June 2008, the Investment Committee was comprised of John Clark, Earl Talos, Joseph Gray, and Janice Stipp.  Mr. Gray was replaced in June 2008 by Richard Dauch, and Patrick Paige was added to the Committee in July 2008. From approximately July 2008 through February 2009, the Committee was comprised of John Clark, Janice Stipp, Earl Talos, Richard Dauch, and Patrick Paige.

40.     John Clark is Acument's general counsel and has held that position during the entire relevant time period.  Mr. Clark was a member of the Investment Committee during the entire relevant time period.

41.     Earl Talos was Acument's vice president of human resources and administration from approximately May 2007 to February 2009.  Mr. Talos was the chair of the Investment Committee from late 2007 through February 2009.

42.     On June 5, 2008, nearly one month before the Acument Plan invested with Westridge, Towers Watson sent Mr. Clark the Subscription Agreement and Term Sheet for the Westridge investment.  ▮▮▮▮▮▮

43.     Towers Watson told Mr. Clark that the Subscription Agreement required a signature and that Ms. Stipp and Mr. Talos were authorized signers.  Towers Watson further told

Mr. Clark that the other documents provided, including the Term Sheet, were ████

████████████████████████████

44.     The next day, Towers Watson notified the entire Investment Committee that it

had ██████████████████████████████████████████████████████████

████████████████████

45.     Mr. Clark "coordinated the review of the [Subscription] Agreement."  Ex. 6 at

274:21-23 (Tr. of Pls.' Rule 30(b)(6) Dep., Nov. 21, 2013).

46.     Mr. Clark does not know whether he read the Subscription Agreement or

forwarded it to anyone else on the Committee.  *See* Ex. 7 at 91:19-92:2, 236:5-8 (Tr. of J. Clark

Dep., Nov. 6, 2013).

47.     Mr. Talos, the Chair of the Investment Committee, signed the Subscription

Agreement, but he did not actually read it.  *See* Ex. 8 at 178:19-24 (Tr. of E. Talos Dep., Nov. 8,

2013).

> **B.     The Subscription Agreement and Term Sheet Provide the Very Information
> Plaintiffs Allege Should Have Been, But Was Not, Provided to the Investment
> Committee.**

48.     Plaintiffs allege that Towers Watson did not understand Westridge's investment

strategy and that the investment was not "adequately describe[d] to the Investment Committee."

Complaint ¶¶ 51, 62(b), 62(c), 69.

49.     But the three-page Term Sheet discloses and fully explains ██████████

██████████████████████████████████████████████████████████

████

50.     Furthermore, Towers Watson explained Westridge's investment strategy to the

Investment Committee at a meeting on February 26, 2008.

24

51.     Plaintiffs further allege that Towers Watson failed to tell the Investment Committee that the Westridge investment used leverage, or the risks associated with leverage. Complaint ¶¶ 9, 51; Ex. 7 at 189:2-10 (Clark Dep. Tr.).

52.     But the Subscription Agreement discloses and explains █████████████

███████████████████████████████████████████████████████████████████

████

53.     Plaintiffs further allege that Towers Watson failed to tell the Investment Committee that the Westridge investment involved derivatives.  Complaint ¶ 51.

54.     But the Term Sheet discloses and explains ██████████████████████

████████████    Indeed, the Term Sheet further provides a ████████████████

██████████████████████████████████████████████████████████

███████████████

55.     Furthermore, Towers Watson explained to the Investment Committee at a meeting on February 26, 2008 that Westridge invested in futures contracts.

56.     Plaintiffs allege that Towers Watson failed to disclose that the Westridge investment was located offshore.  Ex. 7 at 204:22-205:2, 206:8-11; *see also* Complaint ¶ 92.

57.     But the first paragraph of the Subscription Agreement discloses that ████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████

58.     Plaintiffs allege that Towers Watson failed to tell the Committee who had possession of the actual invested funds.  Ex. 7 at 134:8-13, 155:9-16.

59.     But the Term Sheet discloses ████████████████████████████████████

██████████████████████████████████████

60.     Plaintiffs allege that Towers Watson failed to tell the Committee that the investments were executed by WG Trading Company, the fund's broker-dealer.  Ex. 7 at 135:18-25.

61.     But the Term Sheet discloses, on the first page, that ██████████████

████████████████████████████████████████████████████████

62.     Plaintiffs allege that the Committee was not told about the "different entities involved" in the Westridge investment strategy.  Ex. 7 at 323:16-20.

63.     But the first page of the Term Sheet discloses and explains ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████

64.     Furthermore, Towers Watson explained the structure of the Westridge investment to the Investment Committee at a meeting on February 26, 2008.

65.     Accordingly, to the extent the information described in paragraphs ████████ above was important to Acument in order to fulfill its fiduciary duties to the Plan, its apparent failure to read the materials provided to it by Towers Watson constitutes a breach of its fiduciary duties.

**C.     Contrary to Plaintiffs' Allegations, the Chair of the Investment Committee Represented That He Understood the Strategy of the Westridge Investment.**

66.     Plaintiffs allege that if Acument understood the structure and investment strategy of Westridge, it would not have selected Westridge.  *See, e.g.*, Complaint ¶¶ 9, 55-98; Ex. 7 at 144:6-10 (Clark Dep. Tr.).

67.     Mr. Talos, the Chair of the Investment Committee, represented in the Subscription Agreement that he personally had ████████████████████████████

26

████████████████████████████████████████████████████

███████████████████

68.     If Mr. Talos's representation was truthful, then Plaintiffs' claim that Acument would not have invested in Westridge if it understood the investment strategy is false. Alternatively, if Mr. Talos falsely represented in the Subscription Agreement that he had independently investigated and evaluated Westridge and understood the nature of the investment, then Acument violated its fiduciary duties.

**D.      Contrary to Plaintiffs' Allegations, the Chair of the Investment Committee Represented That He Had Concluded that the Westridge Investment Would Not Be in Violation of the Investment Policy or ERISA's Diversification Requirements.**

69.     Plaintiffs allege that the Westridge investment was not in compliance with the Plan's Investment Policy.  *See* Complaint ¶¶ 82-88.  Plaintiffs further allege that the Westridge investment was in violation of ERISA's diversification requirements as to the Plan.  *See* Complaint ¶¶ 89-98.

70.     Mr. Talos represented in the Subscription Agreement that he personally had

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

71.     If Mr. Talos's representation was truthful, then Acument was in agreement with Towers Watson that the Westridge investment was in compliance with the Investment Policy and did not violate ERISA's diversification requirements.  Alternatively, if Mr. Talos falsely represented in the Subscription Agreement that he had determined that the Westridge Investment was in compliance with the Investment Policy and did not violate ERISA's diversification requirements, then Acument violated its fiduciary duties.

27

E.     **Acument Wholly Failed to Investigate or Evaluate Westridge.**

72.     Acument concededly ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

73.     If Acument had independently investigated and evaluated Westridge, it would

have understood the basic characteristics of the investment, as described in paragraphs █

████████████

74.     By failing independently to investigate and evaluate Westridge, and thus failing to

understand the basic characteristics of the investment, Acument violated its fiduciary duties.

## COUNT I: CONTRIBUTION UNDER ERISA

75.     Towers Watson re-alleges and incorporates by reference all of the allegations of

paragraphs ████████ above.

76.     As a fiduciary of the Plan, Acument was obligated to discharge its duties with

respect to the Plan in accordance with ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1).

77.     Acument breached its fiduciary duties under ERISA Section 404(a)(1), 29 U.S.C.

§ 1104(a)(1), by (i) failing independently to investigate and evaluate Westridge; (ii) failing to

read the materials provided to it by Towers Watson; and (iii) making false representations on

matters affecting the Plan.

78.     Acument is also liable as a co-fiduciary under ERISA Section 405(a), 29 U.S.C. §

1104(a)(1), to the extent its violations of Section 404(a)(1) enabled the losses to the Plan

Plaintiffs allege were caused by Towers Watson.

79.     Accordingly, although Towers Watson denies that it breached its fiduciary duties,

in the event the Court finds it is liable for losses to the Plan, Acument is liable for contribution.

**PRAYER FOR RELIEF**

For the foregoing reasons, Towers Watson respectfully requests that if this Court enters judgment against it on any claim asserted by Plaintiffs, the Court also enter judgment against Acument for appropriate contribution under ERISA, plus prejudgment interest.  Towers Watson also requests its reasonable attorneys' fees, costs, and any further relief that the Court deems just and proper.

Dated: January 15, 2014

Respectfully submitted,

By: /s/ Alex G. Romain

Stephen L. Urbanczyk
Alex G. Romain
Vidya Atre Mirmira
Eli S. Schlam
Michael H. Page
Adam G. Yoffie
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029

*Counsel for Defendants-Third-Party Plaintiffs Towers Watson & Co. and Towers Watson Investment Services, Inc.*

## CERTIFICATE OF SERVICE

I, Michael H. Page, hereby certify that on January 15, 2014, a true and correct copy of the

foregoing Defendants' Amended Answer and Counterclaim was served via email upon:

Keith W. Miller, Esq.
PERKINS COIE LLP
30 Rockefeller Plaza
25th Floor
New York, New York  10112-0015
Attorney for Plaintiffs

/s/ Michael H. Page
Michael H. Page