UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:                       │
│ DATE FILED: 2/10/14          │
└─────────────────────────────┘
```

------------------------------------------X

ACUMENT GLOBAL TECHNOLOGIES, INC. and
ACUMENT GLOBAL TECHNOLOGIES, INC.
PENSION PLAN,

       Plaintiffs, :

     v.      : 12 Civ. 0506 (LLS)

TOWERS WATSON & CO. and TOWERS WATSON : **OPINION and ORDER**
INVESTMENT SERVICES, INC. (F/K/A WATSON
WYATT INVESTMENT CONSULTING, INC.), :

    Defendants and :
    Third-Party Plaintiffs,
           :
     v.      :

WESTRIDGE CAPITAL MANAGEMENT, INC. WG
TRADING COMPANY LP, WG TRADING INVESTORS, :
LP, STEPHEN WALSH and PAUL GREENWOOD,
           :
     Third-Party Defendants.
------------------------------------------X

   Defendants' motion to strike plaintiffs' jury demand raises

the question whether this action, which plaintiffs describe as

concerning "claims of breach of fiduciary duty and a request for

compensatory damages" (Dec. 4, 2013 Mem. in Opp'n to Mtn to Strike,

p. 1), is so equitable in nature as to deprive plaintiffs of the

jury trial they seek.   That right depends on the nature of the

issues and relief sought in the case.   The Seventh Amendment of the

Constitution provides that "In Suits at common law, where the value

in controversy shall exceed twenty dollars, the right of trial by

jury shall be preserved. . . ."   The Supreme Court has consistently

interpreted the reference to common law to

   'suits in which <u>legal</u> rights were to be ascertained and
   determined, in contradistinction to those where equitable

rights alone were recognized, and equitable remedies were
administered.'

Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41, 109 S.Ct. 2782,
2790 (1989) (emphasis in original), quoting Parsons v. Bedford, 3
Pet. 433, 447, 7 L.Ed. 732 (1830).

The familiar form of analysis first determines the similarity
of the action to those customarily heard by courts of equity or
admiralty in England in the 18th century, and then determines
whether the desired remedy is legal or equitable in nature, which
is more important in the analysis.   Id. 492 U.S. 42.

Neither part is difficult in this action by plaintiffs Acument
Global Technologies Pension Plan (and its grantor Acument Global
Technologies,   Inc.)   against   its   investment   consultant   and
acknowledged   fiduciary   now   known   as   Towers   Watson   &   Co..

Paragraph 3 of the complaint alleges that

> In  accepting  the  role  of  Plaintiffs'  investment
> consultant, Watson Wyatt [defendants' predecessor] agreed
> to provide the Plaintiffs with the high standards of care
> applicable to fiduciaries under the Employee Retirement
> Security Act of 1974 ("ERISA").   As described in more
> detail  herein,  however,  Watson  Wyatt's  conduct  was
> woefully inadequate and completely lacking, bordering on
> intentional misconduct and gross negligence.

The contract retaining Watson Wyatt (except within quotations,
hereinafter referred to as Towers Watson) drew a stark distinction
between the fiduciary services it was to render, and its other,
generally administrative or administerial, services which were not
fiduciary.    Thus,  the  fiduciary  services,  consisting  of  the
selection and appointment of investment managers for the Acument

Pension Plan and their replacement when necessary, were separately defined in Exhibit A to the Agreement:

CO-FIDUCIARY SERVICES

1.    With respect to the Acument Pension Plan, Watson Wyatt will have responsibility for the:

    (a)   negotiation of financial terms of appointment of each investment manager (including transition managers) for the Acument Pension Plan and the actual exercise of discretion to appoint such managers. Assist in the preparation and completion of a written agreement with each investment manager that conforms in all respects with ERISA and all other applicable law; and

    (b)   monitoring, termination and replacement of all investment managers (including transition managers), as necessary and in the best interests of the Acument Pension Plan.

Towers Watson agreed to perform those services under the standard of care applicable to fiduciaries under ERISA (Agreement § 2):

> Standard of Care.  Watson Wyatt agrees to perform the Fiduciary Services under the Agreement in accordance with the standard of care applicable to fiduciaries under ERISA.  In addition, Watson Wyatt will perform all of the Services with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

Except as to those particular fiduciary services, the parties agreed (id. § 1.2) "that Watson Wyatt is not otherwise a fiduciary with respect to the Plan."  The Agreement made that clear (id. § 1.4):

> Additional Services.   In addition to providing the Fiduciary Services as set forth in this Agreement, Watson Wyatt agrees to provide the additional services described in the attached Exhibit B (the "Additional Services").

3

The parties acknowledge and agree that Watson Wyatt is not a "fiduciary," as that term is defined in Section 3(21) of ERISA, with respect to the Plan by virtue of Watson Wyatt's provision of the Additional Services.

The Agreement stipulated that Towers Watson was a fiduciary solely for the stipulated investment-manager-related services (quoted above) and would not be liable for any failures of performance with respect to the other services (id. § 8.1):

8.1  By Watson Wyatt.  Watson Wyatt acknowledges, represents and warrants to the Company and the Committee that--

   (a) it is a fiduciary (as that term is defined in Section 3(21)(A) of ERISA) with respect to the Plan solely for the limited purposes identified in Exhibit A hereto, and is a registered investment advisor as defined in the Investment Advisors Act of 1940;

        . . .

   (c) there exists currently in full force and effect an insurance policy protecting Watson Wyatt (and its officers, directors and employees) against liability or loss for a breach of fiduciary responsibility, and Watson Wyatt warrants that such insurance policy will be maintained at all times while the Agreement is in effect;

        . . .

   Watson Wyatt makes no representations or warranties except as expressly provided herein. Subject to ERISA and Section 8.3 of this Agreement, Watson Wyatt's liability for any defect in the Services or any failure or breach in the performance of this Agreement will be limited to reperformance of any defective Services at no additional cost to the Company, the Committee or the Plan. If Watson Wyatt's reperformance of defective services would not provide an adequate remedy for a breach of this Agreement, Watson Wyatt's liability will be limited to the amount paid for any such defective Services. Watson Wyatt will not be liable to the Company, the Committee or the Plan or any third party for any

4

> indirect, special or consequential damages,
> economic loss or lost profits . . . .

The complaint in this action follows that template. It alleges that Towers Watson recommended Westridge Capital Management, Inc. as investment manager; the Pension Plan ultimately invested $56.5 million with Westridge, and lost it all when "Westridge turned out to be a massive Ponzi scheme" (¶¶ 1-8). It claims that (id. ¶¶ 9 and 10):

> 9.   Plaintiffs would have avoided an investment with investment manager Westridge and avoided substantial losses had Watson Wyatt acted with the care, skill, prudence and diligence required of a fiduciary under federal law and in accordance with the investment consulting agreement, by appropriately disclosing the incomplete due diligence, the concerns that had been uncovered with respect to investment manager Westridge, or by explaining the highly leveraged nature and true asset classification of the Westridge investment.

> 10.  Accordingly, Plaintiffs bring this action pursuant to §§ 502(a)(2) and (3), and 409 of ERISA; 29 U.S.C. §§ 1109 and 1132(a)(2) and (3), and seek to recover monies owed to the Plan and other appropriate relief for Watson Wyatt's breach of fiduciary duty as an investment manager to the Plan.

The complaint's claims are based on breaches of the high degree of prudence and diligence required of fiduciaries, with the result that the Plan and its beneficiaries lost assets that would have provided pension benefits (Count I), breaches of the fiduciary duties of undivided loyalty, prudent management and full disclosure concerning the Westridge selection, to the detriment to the Plan (Count II), and failure to act as a fiduciary in accordance with Plan documents in making the Westridge investment and not diversifying it (Counts III and IV), in each case giving rise to the fiduciary's ERISA responsibility to make good to the Plan its

5

losses resulting from such breaches, together with other equitable
or remedial relief (¶¶ 64, 80, 87 and 97).

At a conference with the court on December 6, 2013 plaintiffs'
counsel stated his position that the suit is not upon a contract
(Tr. 25, at 22-24: "All of our claims are breach of fiduciary duty
claims, ERISA breach of fiduciary duty.  We have no contract claims
here.  We haven't brought any contract claims") and that the ERISA
standard imposed a higher duty upon Towers Watson (Tr. 28, at 20)
"yes, I think ERISA imposed a higher duty upon them."  He explained
(Tr. 31, at 5-9):

> So we say they failed to perform, they failed to
> adequately diversify the plan as they should have, which
> is a breach of their obligations in the contract and a
> breach of their fiduciary duty.  We couch it in breach of
> fiduciary duty terms.

So the Agreement makes clear, the complaint asserts, and the
plaintiff insists that the liability standard to be imposed upon
Towers Watson is that of a fiduciary.  As famously stated by Mr.
Justice Cardozo in Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E.
545, 546 (1928):

> Many forms of conduct permissible in a workaday world for
> those acting at arm's length, are forbidden to those
> bound by fiduciary ties.  A trustee is held to something
> stricter than the morals of the marketplace.

The remedy sought is the classic remedy against a fiduciary:
surcharge to repair the damage his breach of duty inflicted upon
the corpus he was charged to protect. Black's Law Dictionary, Ninth
ed. 2009 West Pub. Co. (Thomas Reuters), p. 1579 ("Surcharge, n.
...5. The amount that a court may charge a fiduciary that has
breached its duty.")

6

The case is thus wholly one in equity, and not fitting for a jury.

The motion to strike the jury demand (Dkt. No. 56) is granted.

So ordered.


DATED:   New York, New York
         February 10, 2014


                                    _Louis L. Stanton_
                                    LOUIS L. STANTON
                                       U. S. D. J.

7