

30 Rockefeller Plaza, 22nd Floor
New York, NY 10112-0085
PHONE: 212.262.6900
FAX: 212.977.1649
www.perkinscoie.com

Keith W. Miller
PHONE: (212) 262-6906
FAX:   (212) 977-1641
EMAIL: KeithMiller@perkinscoie.com

July 3, 2014

**VIA ECF**

The Honorable Louis L. Stanton
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

        *Re:*    *Acument Global Techs., Inc., et al. v.*
               *Towers Watson & Co., et al.*, No. 12-cv-506

Dear Judge Stanton:

      We write on behalf of plaintiffs Acument Global Technologies, Inc. and Acument Global Technologies, Inc. Pension Plan (collectively, "Acument") to request a pre-motion conference on Acument's proposed Cross-Motion for Partial Summary Judgment.[1] Acument has taken the position throughout this case that a trial is necessary to resolve all of the issues before this Court. Indeed, it remains Acument's position that a trial on damages is necessary, and that only through a trial can the Court consider all evidence of Defendants' breaches of fiduciary duty. Nevertheless, recent events – including the parties' undisputed pretrial submissions (including the "agreed findings of fact" submitted by the parties on June 27, 2014), and the findings made by the U.S. Department of Labor (the "DOL") – have eliminated doubt that the Court can and should enter judgment in Acument's favor on liability—i.e., that the undisputed facts prove that Defendants breached their fiduciary duties.

---

[1] The proposed motion would be a styled as a "cross-motion" in light of Defendants' pending motion for summary judgment (Dkt. No. 111). To help reduce the burden on the Court, Acument intends to file one set of documents that would constitute its opposition to Defendants' summary judgment motion and Acument's cross-motion.

LEGAL122563511.2

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DALLAS · DENVER · LOS ANGELES · MADISON · NEW YORK
PALO ALTO · PHOENIX · PORTLAND · SAN DIEGO · SAN FRANCISCO · SEATTLE · SHANGHAI · TAIPEI · WASHINGTON, D.C.

Perkins Coie LLP

Hon. Louis L. Stanton
July 3, 2014
Page 2

### 1.   Brief Summary of Undisputed Facts[2]

In 2007, Acument, a manufacturing company, retained Watson Wyatt as its fiduciary pension consultant. At the time, Acument was seeking the assistance of an expert to help it to attain its investment goal of funding a termination of the pension plan. Watson Wyatt depicted itself as a leading pension consultant with substantial expertise in the field, and touted its manager research experience and resources.

Acument and Watson Wyatt entered into a contract, and Acument became an Advanced Investment Solution, or "AIS", client of Watson Wyatt. A key distinction between Watson Wyatt's AIS clients and its other clients was that for AIS clients, like Acument, Watson Wyatt assumed a larger role in investment manager selection. With AIS clients, Watson Wyatt would have discretion to select the manager it believed was best for the client and recommend that manager to the client, who would then approve or disapprove the recommendation. Indeed, Watson Wyatt described the AIS program to Acument as an outsourcing solution, in which Watson Wyatt would provide full-time investment professionals to act as Acument's staff.

Watson Wyatt recommended that Acument invest 22% of its assets in Westridge Capital Management, Inc.[3] However, Watson Wyatt had failed to thoroughly research Westridge prior to making the recommendation. Indeed, Defendants do not dispute that Watson Wyatt did not conduct full due diligence into "operational" or "soft risk" issues, including, for example, Westridge's custodianship and control over assets; the risks associated with Westridge's use of uncollateralized structured notes issued by its unaudited and unregulated affiliates; and governance issues. Defendants moreover do not dispute that Watson Wyatt did not independently verify Westridge's reported investment returns or trading activities.

When the Westridge fraud was revealed, the Court-appointed Receiver found that Westridge had a long history of commingling funds among its affiliated entities. Moreover, Westridge used structured notes to funnel investors' funds to an unregulated, unaudited offshore entity – from which Westridge's principals had the ability to take funds. It is undisputed that Watson Wyatt's due diligence into Westridge did not involve a comprehensive review of the Westridge entities, structured notes, or custodianship over funds. In its February 28, 2013 letter to Defendants, the U.S. Securities and Exchange Commission ("SEC") stated that had Watson Wyatt conducted proper due diligence, it would have detected and disclosed the fact that

---

[2] These undisputed facts are summarized from the parties' "agreed findings of fact" contained in the parties' Joint Pre-Trial Order dated June 27, 2014 (Dkt. No. 109).

[3] The process by which Watson Wyatt selected Westridge was highly flawed and imprudent. However, the record on that issue contains disputed facts, therefore it is an example of an issue that Acument would raise at trial if this cross-motion is not granted.

Hon. Louis L. Stanton
July 3, 2014
Page 3

Westridge's affiliated entity—WG Trading, Inc. ("WGTI")—may not be creditworthy or have the ability to re-pay the structured notes.

Acument approved the Westridge investment based on Watson Wyatt's supposedly informed recommendation, and the information that Watson Wyatt provided – which Acument believed at the time to be all of the material facts regarding its investment in Westridge. Yet Watson Wyatt undeniably made the following misrepresentations about Westridge: that it carried the *same* risk as the S&P 500 Index, when in fact the risk was different in light of Westridge's investment structure and use of structured notes and leverage; and that Westridge had a long history of consistent performance, even though Watson Wyatt had never verified Westridge's professed performance results.[4] Watson Wyatt also failed to disclose material facts to Acument, including that: WGTI, one of the Westridge affiliates who would obtain Acument's investment funds, was an unregulated and unaudited entity; Watson Wyatt had not conducted operational due diligence, including on issues such as Westridge's vehicles, business operations, use of structured notes, and compliance controls; Watson Wyatt had not reviewed Westridge's financial statements, subscription agreement, or term sheet; and personnel at Watson Wyatt had expressed concerns about Westridge.

Furthermore, after the investment in Westridge was made, Watson Wyatt misrepresented Westridge's performance to Acument. Watson Wyatt gave Acument presentations in which the performance of the S&P 500 Index was depicted as Westridge's performance, when in fact Watson Wyatt did not know how well Westridge was actually performing.

In January 2014, the DOL—the agency responsible for interpreting and enforcing ERISA—concluded an investigation of Watson Wyatt and made findings that Watson Wyatt had breached its fiduciary duties to Acument and violated several provisions of ERISA. The DOL found that Watson Wyatt had failed to conduct adequate due diligence of Westridge, failed to inform Acument that it had not completed its due diligence of Westridge, failed to disclose material information about the risks and red flags associated with Westridge, and failed to properly present Westridge as a derivative-based investment rather than a large cap investment. The DOL thus concluded that Watson Wyatt has violated ERISA § 404(a)(1)(A) and (B). *See* Jan. 23, 2014 Letter from the Dep't of Labor to Towers Watson Investment Services, Inc. (Exhibit A).

More recently, in a letter dated May 29, 2014, the DOL reiterated that it has concluded its investigation of Watson Wyatt, and based on the facts determined in the investigation, has concluded that Watson Wyatt has breached its fiduciary duties to Acument and violated several provisions of ERISA. *See* May 29, 2014 Letter from the Dep't of Labor to Towers Watson Investment Services, Inc. (Exhibit B).

---

[4] Additional misrepresentations and omissions involve issues of disputed fact, and would be a subject at trial.

Hon. Louis L. Stanton
July 3, 2014
Page 4

### 2. Defendants' Due Diligence Was Imprudent

Sections 404 and 409 of ERISA require fiduciaries such as Watson Wyatt to discharge their duties with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character with like aims." 29 U.S.C. § 1104(a)(1)(B). In assessing whether Watson Wyatt acted prudently, the Court must take into account everything Watson Wyatt knew or *should have known* at the time it investigated and recommended Westridge. *See Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 918-19 (8th Cir. 1994). As an expert advisor, Watson Wyatt's lack of familiarity and understanding – and its subjective belief as to the prudence of its actions – are not defenses. *See United States v. Mason Tenders Dist. Council of Greater N.Y.*, 909 F. Supp. 882, 886, 888 (S.D.N.Y. 1995).

Watson Wyatt's due diligence was imprudent because Watson Wyatt failed to thoroughly research operational and soft risk aspects of Westridge. It was simply unreasonable for Watson Wyatt to recommend Westridge as an investment when it had not thoroughly researched Westridge's operations, investment vehicles, use of structured notes, custodianship over assets, and governance – and the risks associated with each. The DOL shares Acument's views, having concluded that Watson Wyatt failed to conduct adequate due diligence of Westridge and failed to disclose material information about the risks and red flags associated with Westridge to Acument. *See* Ex. A, at 5-8.

Although a fiduciary's behavior is often measured against industry standards, *see DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758, 772 (E.D. Va. 2005), compliance with industry standards alone does not necessarily mean that a fiduciary has met its obligations to act prudently, *Hoemke v. N.Y. Blood Ctr.*, 912 F.2d 550, 552 (2d Cir. 1990) ("if a given industry lags behind in adopting procedures that reasonable prudence would dictate be instituted, then [courts] are free to hold a given defendant to a higher standard of care than that adopted by the industry"). Thus, while the parties would offer disputed expert testimony at trial regarding the industry standards for due diligence, the Court is free to – and should – determine at the summary judgment stage that Watson Wyatt's undisputed due diligence failings were imprudent as a matter of law, regardless of industry standards. This is particularly true in light of the fact that Acument was an "AIS" client, who was especially reliant on Watson Wyatt's "outsourced" and "discretionary" services.

Watson Wyatt's undisputed conduct caused a loss to Acument. Had Watson Wyatt learned all of the material facts about Westridge – for example, that Acument's money would be invested in uncollateralized structured notes issued by an unregulated, unaudited entity, and that Westridge's principals had the ability to transfer money from that entity at will – it would have affected any reasonable analysis of Westridge and whether it was an appropriate investment for Acument.

Hon. Louis L. Stanton
July 3, 2014
Page 5

### 3. Defendants' Misrepresentations and Omissions Violated Their Fiduciary Duties

Under ERISA sections 404 and 409, Watson Wyatt had a duty of loyalty, which includes an "affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading [its] clients." *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 194 (1963). A fiduciary's duty to inform the client and avoid material omissions exists regardless of whether the client failed to comprehend or ask questions about a particular aspect of the plan. *See Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1282, 1300 (3d Cir. 1993).

As described above, the undisputed facts prove that Watson Wyatt violated its fiduciary obligations by both misrepresenting material facts and failing to disclose material facts. The misrepresented and/or undisclosed facts were objectively material, as they would have altered the total mix of information available to a reasonable investor when approving the Westridge investment. *See SEC v. Nat'l Student Mktg. Corp.*, 457 F.Supp. 682, 708 (D.D.C. 1978).[5] The DOL similarly concluded that Watson Wyatt failed to inform Acument of material facts about Westridge and about Watson Wyatt's due diligence efforts, and failed to properly present Westridge as a derivative-based investment rather than a large cap investment. *See* Ex. A, at 7-9.

\* \* \*

The Court can and should substantially narrow the trial issues by finding in Acument's favor on liability. Acument submits that this case can proceed to trial on damages alone, because the undisputed record dictates that summary judgment of liability be entered against Watson Wyatt.

>Respectfully submitted,
>*/s/ Keith W. Miller*
>Keith W. Miller

cc:    Defendants' counsel of record (via e-mail)

---

[5] Watson Wyatt's purported affirmative defenses are unsustainable on the summary judgment record, as will be addressed by Acument in its opposition to Watson Wyatt's motion for summary judgment.

LEGAL122563511.2